## LARRIMORE v. AMERICAN NATIONAL INS. CO.

No. 28756. April 11, 1939.

Kelly Brown, for plaintiff in error.

Julian B. Fite and Bower Broaddus, for defendant in error.

DANNER, J. The plaintiff was an employee in the coffee shop in the Huber Hotel in Muskogee, Okla. The hotel was owned by the defendant. The defendant leased the coffee shop to a Mrs. Schultz, and exercised no control over her operation thereof. The defendant, however, did furnish the lessee with some cans of rat poison, for the purpose of exterminating rats in the restaurant.

One of the plaintiff's duties was to light the steam table in the restaurant. On the day of the accident involved herein, she lighted a match and extended it into the steam table at or near the place where the gas burner would ignite, but before she turned on the gas there was a flash or explosion which apparently was caused by the ignition of a can of rat poison near her hand. She was severely burned on that hand, and thereafter brought this action against the defendant owner of the hotel. Both sides waived a jury, and at the conclusion of the evidence and argument the trial judge made certain findings of fact and conclusions of law and held in favor of the defendant. The plaintiff appeals.

The plaintiff makes no complaint of the accuracy of the findings of fact. Her sole contention is that the court erred in the application of the law to said findings.

Eliminating facts elsewhere stated herein, and findings not material to the issues on appeal, the findings in reduced substance are as follows: The rat poison furnished by defendant to Mrs. Schultz was an ordinary commercial product, put up by a manufacturer and sold to the public through ordinary grocery stores. It was furnished in a tin container carrying a label, the material portions of which are:

"RAT DOOM

Poison      Poison.

This phosphorus paste is guaranteed to rid any premises of rats and mice. In case of poisoning take an emetic to cause vomiting, after which take a stimulant and consult a physician at once."

The court found that said label was notice only of the facts and statements contained therein, and that defendant had no other notice with respect to the nature of the poison except that which would be chargeable to common experience or common knowledge as to the inflammability or dangerous character of phosphorus. The court found that the only expert testimony on the latter question was that of a certain expert. He then incorporated all of the questions and answers making up the entire testimony of said witness. Because of its length we do not copy it. For the purpose of considering the correctness of the judgment, the following salient features of the testimony are sufficient: Phosphorus in its pure state is highly inflammable, but the rat poison involved in this case was a paste compound containing but from one and one-half to two and four-tenths per cent. phosphorus. Due to evaporation of certain ingredients, a can of this paste would be less inflammable when first opened than after it had been opened and permitted to dry out for awhile. A sample of the paste at its highest phosphorus content (two and four-tenths per cent.) was not inflammable even after being heated approximately 300 degrees Fahrenheit. In open court a sample thereof was held in a flame and then burned slowly, but sputtered and became extinct when the flame was withdrawn. The expert testified that it was not dangerously inflammable, though he stated that if its contents were spilled on plaintiff's hand and a lighted match were held right against it, a painful injury would occur. The witness further testified that the phosphorus in the paste, as well as other ingredients, was poisonous if eaten. (We make the foregoing summary of the

testimony from a careful inspection of the questions and answers, and not entirely from the summary thereof as furnished in plaintiff's brief.)

The court remarked on the test which had been made in open court and found that under that test the poison would not even burn without the application of flame thereto, and that when the flame was withdrawn the rat poison sputtered and went out; that the sample tested, however, was considerably dried out. (The expert testified that the poison was more inflammable when dried out.) The court further found, that the plaintiff was free from contributory negligence.

The court made four conclusions of law. We omit the third for the reason that it states a hypothetical case which is helpful but not necessary to the discussion, and upon which we should express no opinion. We omit the fourth because it merely set forth generally the judgment of the court, for the defendant. The first and second conclusions of law are as follows:

"1. Findings of fact having been separately made and filed herein, the court concludes that the printed matter on the can of rat poison mentioned in said findings (while sufficient to charge the defendant with notice of its character for being poisonous) was not sufficient to charge the said defendant with legal notice of any dangerously inflammable or explosive character thereof so as to render it liable in damages by reason of the accident in controversy in this action.

"2. In order to hold a person liable in negligence, the result complained of must be not only the direct and proximate but also the 'natural' result of the facts upon which the injury is based. Here the accident was the direct and proximate result of the furnishing of the can of poison to Mrs. Schultz and of her use thereof but it did not flow from its inherent character and intended use as poison. The result being unusual and not reasonably to be expected from poison, it is the conclusion of the court that the defendant is not liable in damages by reason of such unusual result."

The plaintiff contends that defendant is liable by reason of section 2440, O. S. 1931, 21 Okla. St. Ann. sec. 1197, reading:

"Whoever shall, except in a safe place on his own premises, lay out strychnine or other poison, is guilty of a misdemeanor."

Although neither the plaintiff nor the operator of the restaurant was an employee of the defendant, but said restaurant was operated under a lease, we may pass over possible questions concerning agency and proceed directly to the substance of the controversy, as if the lessee and plaintiff were employees of the defendant.

It is clear enough that the substance laid out was poison. It may further be said that if the owner had not furnished the lessee with the rat poison, the plaintiff would not have been injured; and still it does not follow that the statute makes defendant liable for plaintiff's injury. It is clear that the purpose of the above statute is to protect persons and animals from injury by being poisoned. The injury here was not the class of injury intended to be prevented by the statute. There was no connection between the poisonous nature of the substance and plaintiff's injury.

It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him. 20 R. C. L. 41, 42, 43; 45 C. J. 726-728; Lang v. New York Central R. Co., 255 U. S. 455, 41 S. Ct. 381, 65 L. Ed. 729. Negligence is a breach of duty. Those only to whom that duty is due and who have sustained injuries of the character its discharge was designed to prevent can maintain actions for its breach. Chicago, G. W. Ry. Co. v. Minneapolis, St. Paul & S. S. M. Ry. Co., 176 Fed. 237, 100 C. C. A. 41. 20 Ann. Cas. 1200.

The rule in this jurisdiction is that one who does an unlawful act is not thereby placed outside of the protection of the law, but that to have this effect the unlawful act must have some causal connection with the injury complained of. Marland Refining Co. v. Duffy, 94 Okla. 16, 220 P. 846, 35 A. L. R. 52; Freeborn v. Holt, 100 Okla. 50, 227 P. 136; Bradley v. Chickasha Cotton Oil Co., 184 Okla. 51, 84 P.2d 629. Plaintiff having in no way become poisoned by the "rat doom" furnished by defendant, the above section of our statute does not, of itself, render the defendant negligent as to plaintiff's injury.

It may be observed that there is still another reason why our conclusion in this respect is correct. The statute forbids the laying out of strychnine or other poison "except in a safe place." The "safe place" contemplated by the statute obviously means that place which would be safe in regard to the substance's character as poison. What

would be a safe place for poison might not be a safe place for gasoline, and vice versa. The evidence reveals that the can of rat poison involved in this case was placed by Mrs. Schultz on the floor, under the lower metal shelf of the steam table, which shelf was about six inches above the floor, and said poison was pushed back under the shelf some eight or ten inches. It might almost be said that it was hidden. At any rate, it could not correctly be said that the can was placed other than in a safe place for poison, in view of the particular circumstances of the case.

The plaintiff next complains that although the trial judge found that defendant had whatever knowledge of the contents of the can as would be imputed to him from common knowledge or a reading of the label, still he found that the defendant was not liable. In this connection the plaintiff's argument is that phosphorus is known to be highly inflammable; that the label showed that it was phosphorous paste; that defendant therefore should have known that the paste was inflammable and should have informed the lessee and plaintiff thereof. This argument however, misconceives the facts in the case. It would appear to be predicated upon the assumption that the can contained pure phosphorus. Since the mixture contained but approximately 2 per cent. phosphorus, and the evidence showed it ordinarily not to be dangerously inflammable. the argument is beside the point. In the first conclusion of law, as set forth above, which in reality is largely a finding of fact, the court concluded that the printed matter on the can. while sufficient to charge the defendant with notice of the fact that it was poisonous. was not sufficient to charge the defendant with notice of any dangerous inflammability. The label merely referred to the contents as being phosphorous paste. We cannot agree with plaintiff that the average prudent man would thereby be led to believe that the mixture was dangerously inflammable or explosive.

The plaintiff is apparently of the belief that because the trial judge stated in his second conclusion of law that the injury must be the "natural" result of defendant's acts or omissions, the trial judge therefore believed that before the defendant could be held liable the accident must be such as would necessarily result from said act or omission. We do not so construe that conclusion of law. In discussing the element of negligence and the definition of proximate cause, the word "natural" is often used in describing the character of foresight with which a defendant is charged. In Chicago, R. I. & P. Ry. Co. v. Nagle, 55 Okla. 235, 154 P. 667, we said that the evidence, to justify a finding of negligence, must show a breach of duty on the part of the defendant, such that a reasonable person should have foreseen would as a "natural consequence" cause an injury. We used virtually the same language in the following cases: Koons v. Shelburne Motor Co., 167 Okla. 634, 31 P.2d 573; Oklahoma G. & E. Co. v. Wilson, 172 Okla. 540, 45 P.2d 750; Wichita Falls & N. W. Ry. Co. v. Cover, 65 Okla. 110, 164 P. 660.

As stated in the beginning, the plaintiff makes no complaint concerning the correctness of the findings of fact. Those findings include the finding that defendant had no knowledge of the poison's inflammability other than what knowledge would be obtained from reading the label or from common experience. A mere reading of the label would give no one an idea that the can's content was a dangerously inflammable or explosive substance. Nor may we say that common experience imputes such knowledge.

In incidents such as are involved in the present case, knowledge on the part of the defendant, or circumstances sufficient to charge him with knowledge, that the substance or article is inherently dangerous is necessary before the defendant can be charged with negligence. This principle runs all through the law of negligence, and it is founded upon good reason. If the rule were otherwise it would make of the defendant an absolute insurer; he could be held liable for injuries resulting from unknown and unpredictable causes. We deem it unnecessary to cite or discuss many decisions on this point. Reference to the many cases listed under "Negligence," Key Number 24, in the American Digest, is all that is necessary.

The reasoning is somewhat similar to that which is appropriate in cases involving liability of a dealer or retailer who innocently sells articles to persons who become injured thereby. The general rule is that knowledge of the retailer, or facts charging him therewith, must be shown, before he can be held liable. Thus, and without indicating what the result would be in this state, it was held in Clement v. Rommeck, 149 Mich. 595, 113 N. W. 286, 13 L. R. A. (N. S.) 382, 119 Am. St. Rep. 695, that a dealer who buys in the open market an article such as stove polish, which purports to be safe and proper for

use, and sells the same for the purpose for which it is apparently intended, is not liable for personal injuries to the purchaser thereof, caused by the inflammable character of the article, in the absence of negligence on his part, or knowledge by him of its inflammable character. In McSorley v. Katz, 53 Pa. Super. Ct. 243, a purchaser of a can of molasses was injured by an explosion when he removed the top. It was held that the retailer who sold him the molasses was not liable in the absence of some proof that the dealer knew or should have known of the latent cause of the explosion.

While it is clear enough that the defendant knew or should have known that the compound was poisonous, that does not indicate that he knew or should have known that it was explosive or inflammable. With the situation reversed, the case is somewhat similar to Victory Sparkler & Specialty Co. v. Price, 146 Miss. 192, 111 So. 437, 50 A. L. R. 1454, where a manufacturer of fireworks containing phosphorus was held not liable for the death of a person who ate the fireworks instead of exploding them, the purpose for which they were manufactured. The court there, in holding for the defendant, employed the same reasoning as is the basis of this decision, namely, that in the absence of evidence of actual knowledge the defendant is not charged with knowledge that an injury may result from some unexpected use or occurrence not bringing into operation the particular hazard associated with the purpose for which the article was intended.

The defendant furnished the lessee an ordinary commercial product. Not only does the evidence affirmatively show that the product was not in fact highly inflammable or inherently dangerous as an explosive, but said evidence fails to show that the defendant had or reasonably should have had knowledge of any latent or unsuspected defect which may have existed in this particular can of the rat poison.

Not having such knowledge, and the evidence failing to show that he reasonably should have had such knowledge, there was no duty upon the defendant to impart any notice or warning of danger to the plaintiff. Notice or warning of danger is not necessary where no danger is reasonably to be anticipated. Lord v. Sherer Dry Goods Co., 205 Mass. 1, 90 N. E. 1153, 137 Am. S. R. 420, 27 L. R. A. (N. S.)

232, 18 Ann. Cas. 41; Favro v. Troy, etc., Bridge Co., 38 N. Y. S. 433; 45 C. J. 874.

We express no opinion on whether "the accident was the direct and proximate result of the furnishing of the can of poison to Mrs. Schultz and of her use thereof," as announced in the trial judge's second conclusion of law. Regardless of that question, the necessary and proper conclusions of law not only sustain but require the judgment as entered, — and the judgment is hereby affirmed.

BAYLESS, C. J., WELCH, V. C. J., and CORN and DAVISON, JJ., concur.